1  MARONEL BARAJAS (SBN 242044)
   MB@barajasriveralaw.com
2  ANNA RIVERA (SBN 239601)
   AR@barajasriveralaw.com
3  **BARAJAS & RIVERA, APC**
   1440 N. Harbor Blvd., Ste 900
4  Fullerton, CA 92835
   Tel/Fax: (714) 443-0096
5
   *Attorneys for Plaintiff*
6

7              UNITED STATES DISTRICT COURT

8             EASTERN DISTRICT OF CALIFORNIA

9  | S.G., a minor, by and through his | Case No.: |
10 | Guardian *ad litem* SHEILA | |
   | ROSARIO FLORES GUTIERREZ | **COMPLAINT FOR DAMAGES** |
11 | | **AND INJUNCTIVE AND** |
   |     Plaintiff, | **DECLARATORY RELIEF** |
12 | | |
   | v. | 1. Americans with Disabilities Act |
13 | | (42 U.S.C. § 12132) |
   | TEHACHAPI UNIFIED SCHOOL | 2. Section 504 of the Rehabilitation |
14 | DISTRICT; FRANCIS M. LYNCH, | Act of 1973 (29 U.S.C. § 794) |
   | in his official capacity Tehachapi | 3. Education Amendments Act, |
15 | Unified School District | Title IX (20 U.S.C. §§ 1681- |
   | Superintendent; KENDRA BAILEY; | 1688) |
16 | ELIZABETH SPODEN; and DOES | 4. 14th Amendment, Equal |
   | 1-10, INCLUSIVE | Protection (42 U.S.C. §1983) |
17 | | 5. California Gov't Code § 11135 |
   |     Defendants. | 6. California Educ. Code §§ 200, |
18 | | 201, 220, 230 |
   | | 7. California Gov't Code § 835 |
19 | | 8. California Gov't Code § 815.6 |
   | | 9. Negligent Supervision |
20 | | 10.Negligence |
21 | | |
   | | **DEMAND FOR JURY TRIAL** |
22

23

24

25

26

27

28

COMPLAINT

Plaintiff S.G. a minor by and through his parent and guardian *ad litem*, Sheila Rosario Flores Gutierrez ("S.G." or "Plaintiff") brings this action for damages and injunctive and declaratory relief against the Tehachapi Unified School District ("District"" or "Tehachapi USD"), District Superintendent Francis M. Lynch, in his official capacity, Kendra Bailey, Principal of Golden Hills Elementary School, in her individual capacity, Elizabeth Spoden, Vice Principal of Golden Hills Elementary School, in her individual capacity, and DOES 1-10. Plaintiff alleges on information and belief as follows:

## INTRODUCTION

1.      Plaintiff S.G. is a six-year-old special needs child with permanent disabilities who was previously a student in the Tehachapi Unified School District. Prior to reaching the age of five, he was diagnosed with autism. The physical manifestations of this permanent disability—difficulty with, among other things, understanding and interpreting social cues, adaptive skills such as toileting, social interactions, communication, transitions, peer relationships—cause S.G. to stand out from similarly aged students and make him prone to being targeted by bullies. Further, S.G. has also been diagnosed with a speech and language disorder. As a result of his disabilities, S.G. has difficulty with, among other things, communicating and expressing himself. His speech can be difficult to understand. He also sounds younger than his age and, therefore, is often perceived to be younger than he is. S.G. is also of a smaller stature and often perceived as failing to conform to stereotypical notions of masculinity. Overall, the physical and social manifestations of his disabilities cause S.G. to stand out from other similarly-aged students and make him prone to being targeted by bullies.

2.      Defendants are the Tehachapi Unified School District ("the District" or "Tehachapi USD") and various school officials and staff at Golden Hills Elementary School ("Golden Hills"), a school within the District. This action pertains to Defendants' grossly inadequate response to known incidents of severe,

pervasive, and offensive disability and gender-based peer-to-peer harassment endured by Plaintiff while attending Golden Hills as well its failure to maintain safe premises to S.G.'s detriment.

3.    Because Defendants are entrusted with the safety and education of all students who attend their schools, the law imposes on them certain duties and obligations on Defendants regarding the safety of these students. For instance, whenever Defendants become aware of that a student is being harassed at school, they must take prompt and effective steps reasonably calculated to eliminate this harassment and the hostile environment that it creates. By taking these steps, Defendants help maintain a safe learning environment at school wherein students can focus on their education and develop healthy relationships with their peers.

4.    Despite these duties and obligations, Defendants' response to the known disability and gender-based peer-to-peer harassment endured by S.G. at Golden Hills was to ignore, minimize, or dismiss it. Harassment and bullying in the form of insults, taunts, name-calling, threats, intimidation, and physical attacks thus became a relentless and inescapable aspect of S.G.'s school life at Golden Hills. At one point, a peer pushed S.G. off of a swing, which lead to head injuries; on a different day that same peer pushed S.G. off a slide, which led to S.G. being knocked unconscious and suffer a broken arm. And still Defendants did not investigate.

5.    As a direct result of Defendants' deliberate indifference to this known disability and gender-based peer-to-peer harassment and failure to supervise or assist his disabilities, S.G. has suffered, and continues to suffer, physical, emotional and educational harm. Among other things, S.G. has been diagnosed with post-traumatic stress disorder (PTSD) and generalized anxiety disorder stemming from the peer-to-peer harassment and allegations contained herein and exhibits symptoms of severe anxiety, painful recollection of past peer-to-peer harassment, hypervigilance, avoidance, sadness, suicidal ideations, and depression.

6.      Plaintiff has further been deprived of his right to equal access to educational benefits and opportunities provided by the District. The District has also engaged in an ongoing pattern and practice of denying Plaintiff reasonable accommodations for his disabilities, thereby preventing him from meaningfully accessing, participating, and receiving the benefits of the District's programs, services and activities, including the benefits of his education.

7.      As a result of the Defendants' actions and inactions described herein, among other things, S.G.'s parents made the difficult decision to take him out of the District and place him temporarily at Acellus Academy, a private online school, until they could find a more appropriate placement. S.G. began attending Acellus Academy on or about February 28, 2024. He has since enrolled at Heartland Charter School, where he began the 2024-2025 school year and remains there. S.G. would seek to return the District if he felt safe to do so.

8.      Although a special needs child will inevitably face many obstacles and challenges in life, a hostile learning environment at school that fosters a climate of fear and intimidation should not be one of them. Defendants had a duty to protect S.G., a young child, from disability and gender-based peer-to-peer harassment, yet deliberately failed to do so. Defendants also failed to adequately supervise him and his peers on unsafe playground conditions, resulting physical and emotional injuries.

9.      Defendants' actions and inactions demonstrate, among other things, that the District does not conduct adequate education or training for its school officials, teachers, administrators, staff, and students regarding disability and gender-based peer-to-peer harassment of students. S.G. thus seeks declaratory and injunctive relief and damages to remedy Defendants' unlawful conduct.

//

//

//

**JURISDICTION AND VENUE**

10.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1343. The same actions and omissions that form the basis of Plaintiff's federal claims form the basis of his California state law claims. Thus, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 20 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

11.    Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) because Plaintiff resides in, and Defendants operate and perform official duties in Kern County. A substantial part of the vents, acts, and omissions giving rise to claims also occurred in Kern County.

**PARTIES**

**A. Plaintiff**

12.    Plaintiff, S.G. is a small six-year-old boy with disabilities currently in the first grade. He appears by and through his parent and guardian *ad litem* Mrs. Gutierrez.

13.    Presently, and at all times relevant to this action, S.G. was and is a resident of Tehachapi, Kern County, California.

14.    At the times of the events alleged herein, S.G. was a student at Golden Hills Elementary School ("Golden Hills") within the school district boundaries of the Tehachapi Unified School District.

15.    Presently, and at all times relevant this action, S.G. was and is an individual with a disability within the meaning of all applicable federal and state disability non-discrimination laws. S.G. has diagnoses of autism, PTSD, and generalized anxiety. As a result of his autism, S.G. has difficulty with, among other things, understanding and interpreting social cues, adaptive skills such as toileting, social interactions, communication, transitions, peer relationships.

## B. Defendants

### *Tehachapi Unified School District*

16.     Defendant Tehachapi USD is a public school district organized and existing under the laws of the State of California, with the capacity to sue and be sued. The District is sued in its own right and on the basis of the acts of its officials, agents, and employees, including those associated with Golden Hills Elementary School.

17.     The District is located in Kern County.

18.     The District is a public entity, including for purposes of the Title II of the ADA.

19.     The District is a recipient of federal financial assistance such that it is subject to Section 504 of the Rehabilitation Act.

20.     The District is a recipient of state assistance such that it is subject to California Government Code § 11135.

21.     The District is the owner, operator, or lessor/lessee of Golden Hills Elementary School. It is responsible for promulgating policies and procedures for this school.

22.     The District is sued in its own right and on the basis of the acts and/or omissions of its officials, agents and employees. Under law, including California Government Code § 815(a), the District is liable for the unlawful tortious acts hereinafter complained of, including those violating state law and committed by ant District entity or employee acting with the course and scope of their employment.

### *Superintendent Francis M. Lynch*

23.     Defendant Francis M. Lynch is the interim Superintendent of the Tehachapi USD. As Superintendent, Defendant Lynch has authority, oversight, and control of the District's schools and facilities, including the policies, practices, procedures, programs, trainings, activities, services and employees of said schools. Defendant Lynch is responsible for the daily operations of the District. He is also

1  responsible for ensuring that District schools and employees/staff comply with anti-

2  discrimination laws, as well as for ensuring compliance with state and federal laws.

3      24.    Defendant Francis M. Lynch is sued in his official capacity for

4  prospective relief.

5                              *Kendra Bailey*

6      25.    Defendant Kendra Bailey is the Principal of the Golden Hills

7  Elementary School. As principal, Defendant Bailey has authority and control of

8  Golden Hills' programs and facilities, including policies, practices, procedures,

9  programs, activities, services, training, and employees of Golden Hills Elementary

10  School. As principal, she is responsible for ensuring that the Golden Hills

11  Elementary School complies with state and federal law.

12     26.    Defendant Bailey directed and/or participated substantially in the

13  events described herein against S.G. and/or knew of the acts of her subordinates and

14  failed to act to prevent them as required by law. She is sued in her individual

15  capacity for damages.

16                            *Elizabeth Spoden*

17     27.    Defendant Elizabeth Spoden, is the Vice Principal of Golden Hills

18  Elementary School. As vice principal, Defendant Spoden has authority and control

19  of Golden Hills' programs and facilities, including policies, practices, procedures,

20  programs, activities, services, training, and employees of Golden Hills Elementary

21  School. As vice principal, she is responsible for ensuring that the Golden Hills

22  Elementary School complies with state and federal law.

23     28.    Defendant Spoden directed and/or participated substantially in the

24  events described herein against S.G. and/or knew of the acts of her subordinates and

25  failed to act to prevent them as required by law. She is sued in her individual

26  capacity for damages.

27  //

28  //

1

***DOES 1-10***

2      29.    The names and capacities, whether individual, corporate, otherwise,

3  sued herein as DOES 1-10, inclusive, are presently unknown, and Plaintiff will

4  amend the Complaint to insert them when ascertained. Plaintiff is informed and

5  believe and thereon allege that each of these Defendants was a resident of this

6  District and/or has principal offices or was doing business in this District and was

7  and is responsible in some way for the events and damages alleged in this

8  Complaint.

9      30.    Plaintiff is informed and believes that each of the Defendants is the

10  agent, ostensible, agent, alter ego, master, servant, trustor, trustee, employer,

11  employee, representative, lessor, lessee, joint venture, parent, subsidiary, affiliate,

12  related entity, partner and/or associate, or such similar capacity of each of the other

13  Defendants, and was at all times, acting and performing, or failing to act or

14  perform, within the course and scope of such similar aforementioned capacities, and

15  with the authorization, consent, permission or ratification of each of the other

16  Defendants, and is personally responsible in some matter for the acts and omissions

17  of the other Defendants in proximately causing the violations and damages

18  complained of herein, and have participated, directed, and have ostensibly and/or

19  directly approved or ratified each of the acts or omissions of each of the other

20  Defendants, as herein described.

21      31.    Hereinafter, references to "Defendants" shall include Paragraphs 16-

22  30, inclusive, above.

23  **PLAINTIFF COMPLIED WITH GOVERNMENT CLAIM REQUIREMENT**

24         (***with respect to damages under California State law***)

25      32.    Plaintiff complied with California Government Claims Act (also

26  known as the Tort Claims Act), California Government Code § 900 *et seq.* On or

27  about April 21, 2024, Plaintiff filed an administrative tort claim pursuant to

28  California Government Code § 910 *et seq.* with Defendant Tehachapi USD.

1   Plaintiff's claim stated that the claim was timely as to all events but also included
2   an application for leave to file a late claim, to the extent any such claims were
3   required.

4        33.    On or about May 9, 2024, Defendant Tehachapi USD provided a
5   written letter directing Plaintiff to file an application for late claim pursuant to
6   California Government Code § 946.6. Plaintiff again filed an application for late
7   claim along with his tort claim with the Tehachapi Unified School District on or
8   about July 30, 2024. On August 23, 2024, Tehachapi USD by way of letter,
9   accepted his late claim application in part.

10       34.    Plaintiff has thus complied with the requirements of Government Code
11  Section 910 *et seq.*

12  **STATEMENT OF FACTS**

13  ***Facts Regarding Plaintiff S.G.***

14       35.    Before the age of five, Plaintiff S.G. was diagnosed with autism. As a
15  result of this permanent disability, S.G. has numerous physical and other
16  limitations, including: he has difficulty with understanding and interpreting social
17  cues, social interactions, communication, transitions, adaptive skills such as
18  toileting, and peer relationships. S.G. has also been diagnosed with a speech and
19  language disorder. As a result of his language disorders and autism, he has
20  difficulty with speech and expressing himself and tends to sound younger than his
21  age. Among other things, the physical and social manifestations of his disabilities
22  cause S.G. to stand out from other similarly aged students and make him prone to
23  being targeted by bullies, being perceived as younger than his age, and as failing to
24  conform to stereotypical notions of masculinity.

25       36.    Further, as a result of his disabilities, S.G. also had difficulty with
26  adaptive skills such as with toileting, which only worsened while at Golden Hills
27  Elementary School and as the result of the facts alleged herein.
28  //

37.    S.G.'s parents primarily speak Spanish. Accordingly, effective communication with S.G.'s parents require the use of interpreters.

38.    S.G.'s physical and other disability-related limitations make him an easy target for bullies because, among other things, it creates a power imbalance between S.G. and his peers that bullies can use to intimidate, threaten, and harass him.

***Tehachapi Unified School District/Golden Hills Elementary School***

39.    In the fall of 2021, S.G. began attending school in the Tehachapi USD. In the fall of 2021, the District determined that S.G. was eligible for special education services under the category for speech and language impairment and thereafter provided S.G. with an Individualized Education Program ("IEP").[1]

40.    S.G. attended Golden Hills Elementary School ("Golden Hills"), a school in the District, from approximately August 2022 until he was effectively forced to leave the District in approximately the end of February 2024.

***2022-2023 School Year***

41.    During the 2022-2023 school year, S.G. was harassed on the basis of disability and gender by his peers at Golden Hills.

42.    Shortly after the 2022-2023 school year at Golden Hills began, J., S.G.'s classmate (last name unknown), began harass and bullying S.G. based on his disabilities and perceived gender on a daily or nearly daily basis. J. made fun of and taunted S.G. by highlighting his disability-related difficulties with communication, toileting, and social interactions, including by yelling, "What are you saying, We can't understand you," "You talk like a baby," "You're a baby," "You don't know

---

[1] Through this complaint, S.G. does not challenge the adequacy of his Individualized Education Program (IEP) or allege Defendants violated the Individuals with Disabilities Education Act (IDEA). All references to his IEP, IEP team meetings, or special education classroom herein are for background purposes, e.g., to support his status as a qualified individual with disabilities, establish Defendants' knowledge of his disabilities, and provide evidence that Defendants discriminated against him on the basis of his disability-related behaviors.

how to talk", "You're stupid," and "You cry like a baby."  J. also taunted him based on his perceived gender by calling S.G. names like "You look like a girl."

43.    J. also routinely intimidated, bothered, and threatened S.G. by following him and doing things to intentionally upset him.

44.    Based on information and belief, Amandina Vidal (hereinafter "Ms. Vidal"), S.G.'s special education teacher and case carrier, personally observed much of this peer-to-peer harassment and bullying throughout the school year but failed to inform S.G.'s parents that S.G. was being bullied by J. or to take any steps reasonably calculated to end the bullying.

45.    Notwithstanding the above, on or around mid-November or early December 2022, Mrs. Gutierrez informed Ms. Vidal that S.G. told her that he was being bullied by a student named J., who would taunt him and say things like, "You talk like a baby," "You look like a baby," "You cry like a baby," and "You look like a girl." Ms. Vidal said she would separate S.G. and J., including by placing them at different tables. It's unclear whether the two were separated since the harassment and bullying continued unabated. Mrs. Gutierrez would talk to Ms. Vidal several more times about the bullying.

46.    After the winter holiday break, J.'s harassment of S.G. escalated. J. started to physically hit S.G.

47.    For example, around January 10, 2023, J. punched S.G. in the stomach on the playground. Neither Ms. Vidal nor any other school employee at Golden Hills informed S.G.'s parents about this incident. Instead, Plaintiff's parents learned of the incident from S.G. himself on their drive home from school later that day. S.G.'s parents immediately drove back to school to speak with Ms. Vidal about this incident. Ms. Vidal stated that she had not witnessed the incident and perhaps it could have occurred when she was not looking and that she would speak with J. and S.G. and ask J. to ask for forgiveness and that perhaps this could even lead to a friendship, or words to that effect. Ms. Vidal also told Mrs. Gutierrez that if the

1   harassment continued, she would request a meeting with J. and his parents. Despite

2   these statements, Ms. Vidal went on to say that she did not believe that J. was

3   hitting S.G. and that they were just being kids, admitting at the same time however

4   that she was not supervising the whole time so she could not determine if it had

5   actually occurred.

6       48.    S.G. continued to be harassed at school by J.; S.G.'s parents repeatedly

7   and continually expressed their concern to Ms. Vidal regarding the ongoing

8   bullying and harassment. Ms. Vidal, however, refused to meaningfully address

9   parents' concerns and would minimize or downplay the bullying saying things like

10   maybe S.G. and J. were just playing rough or words to that effect.

11       49.    J. continued to harass S.G. both physically and verbally. For instance,

12   his nearly daily taunts of calling him a "You talk like a baby," "Why can't you talk

13   like us?" "You talk like a girl" or a "crybaby" also started making fun of his hair

14   that had been dyed blue, stating that "only girls dye their hair; you look like a girl."

15   S.G, among other things, asked his mother, Mrs. Gutierrez, to cut his hair shorter in

16   a more traditional masculine style, which she did in February 2023. S.G. told his

17   mother that he would never let his hair grow out anymore.

18       50.    Ignored by Ms. Vidal, Mrs. Gutierrez reported the ongoing incidents of

19   harassment to Golden Hills' principal, Kendra Bailey (hereinafter "Defendant

20   Principal Bailey"), on several occasions. For example, in or around March 2023,

21   Mrs. Gutierrez met with Principal Bailey in the morning after dropping S.G. off at

22   school, S.G.'s father was also present. Principal Bailey informed S.G.'s parents that

23   she only had a few minutes because she was busy. Mrs. Gutierrez told Principal

24   Bailey that J. was verbally harassing and physically hitting S.G. on daily and near

25   daily basis, both in class and during lunch. Principal Bailey told Mrs. Gutierrez that

26   she would speak with Ms. Vidal and that she would fix things and make them

27   better. Principal Bailey also told Mrs. Gutierrez, "Don't worry too much; they are

28   just kids," or words to that effect. Mrs. Gutierrez also informed Principal Bailey

that Ms. Vidal had claimed that she would be moving S.G. and J to different tables in class; Principal Bailey informed Mrs. Gutierrez that she would make sure that that occurred.

51.    Shortly after this meeting, while it seemed that the harassment and bullying incidents during class subsided, during non-classroom hours, J. continued to harass and bully S.G. on a nearly daily basis.

52.    Around May 2023, when picking S.G. up from school one day, S.G.'s father found S.G., eyes swollen and teary. When asked what happened, S.G. said that J. had bullied him and punched him in the stomach during recess after he finished his lunch. S.G.'s father immediately reported this to Ms. Vidal. Ms. Vidal dismissively stated that she had not seen it and claimed that S.G. had had a normal day. S.G.'s father insisted that S.G. is not a liar, and Ms. Vidal retorted that she was not a liar either. At that point, Ms. Vidal turned to S.G. and told him, "Don't lie," or words to that effect. S.G., crying, told Ms. Vidal that he was not lying. S.G.'s father, seeing his son in distress, left with S.G. During this interaction, Ms. Vidal was visibly upset, including raising her voice.

53.    Rather than address the persistent and ongoing bullying and harassment, Ms. Vidal accused S.G. of lying without any evidence to support this accusation. Defendants continued to do essentially nothing in response to J. hitting S.G., instead unreasonably allowing the bullying, discrimination, and harassment to continue.

54.    On or around the end of May 2023, Mrs. Gutierrez also informed Principal Bailey that J. had punched S.G. in the stomach. J. Principal Bailey stated that she would speak with S.G.'s teacher and said, "Don't worry, we're at the end of the year, and maybe S.G. won't see [him] next year," or words to that effect. Principal Bailey never communicated with S.G.'s parents again about the incident. This inaction and refusal to address the incidents of harassment created and encouraged a hostile learning environment for S.G.

55.     The bullying and harassment persisted through the end of the school year. Without any meaningful action from Defendants', S.G.'s parents told S.G. to try stay as far away from J. as much as possible.

56.     As a result of the constant harassment and bullying, S.G. suffered physically and emotional injury. For instance, he became of afraid of going to school and also began asking his parents if they could pick him up early because he was scared that J. would hit him during lunchtime.

***2023-2024 School Year***

57.     S.G. continued to attend school at Golden Hills for the 2023-2024 school year. He was in kindergarten.

58.     The school year began in August 2023. Even though J. and S.G. were no longer in the same class, J.'s harassment of S.G. continued. For instance, J. persisted in taunting S.G., stating that he acts and looks like a girl, sounds and talks like a baby, calling him stupid, and derogatorily referring to him as "gay." J. also continued to hit and push S.G. The bullying continued on a near-daily basis. S.G.'s parents saw his demeanor change. He began wetting his bed and having difficulty sleeping. He also expressed that he did not want to go to school.

59.     Towards the end of August and at least twice in September 2023, Mrs. Gutierrez spoke with S.G.'s then-teacher Marlee Juergens ("Ms. Juergens"). Mrs. Gutierrez explained to Ms. Juergens that S.G. informed her that J. was still calling him "gay," that J. was taunting S.G. by claiming that S.G. did not know how to speak and that he sounded like a baby, and was a girl, among other things. Ms. Juergens claimed that this was not happening in class and that everyone liked S.G. She also stated that she could not watch S.G. all the time during lunch and recess. Mrs. Gutierrez also informed Ms. Juergens that on one occasion S.G. informed her that J. had followed him to the restroom and pushed him by the buttocks. Ms. Juergens told Mrs. Gutierrez  that she would speak with S.G. Ms. Juergens also acknowledged that S.G. was distracted in class.

60.    Mrs. Gutierrez continued to express her concerns to Defendants about the physical and verbal harassment that S.G. was experiencing at the hands of J., without any meaningful response. For example, Mrs. Gutierrez went to the front office at Golden Hills several times and asked the secretary if she could speak with Principal Bailey but each time was told that Principal Bailey was too busy and/or was in meetings. Mrs. Gutierrez also called Golden Hills' front office by telephone to ask if she could have a meeting with Principal Bailey and was asked to explain the purpose of the request because Principal Bailey was busy. Mrs. Gutierrez explained that J. was harassing S.G., both verbally and physically, and explained in detail what had been occurring and that she had discussed these concerns with his teachers and others at the District. The front office staff person told Mrs. Gutierrez that she would inform Principal Bailey and told Mrs. Gutierrez to wait for a call.

61.    Mrs. Gutierrez waited a few days but did not receive a call back. As such, on or around October 19, 2023, she went to speak with Ms. Juergens again. Ms. Juergens asked Mrs. Gutierrez to follow her, and she took Mrs. Gutierrez and S.G. to Vice Principal Elizabeth Spoden's ("Vice Principal Spoden") office. Mrs. Gutierrez reported that J. was harassing S.G. both verbally and physically and provided specific details. After Mrs. Gutierrez described all of the events that had been occurring, Vice Principal Spoden started to question S.G. directly. Vice Principal Spoden asked S.G., "Does he bully you every day, every single day? Or every other day," or words to that effect. S.G. responded that he was bullied "every day." Vice Principal Spoden then showed S.G. three pictures on her computer and asked S.G. "Do you remember who J. is?" or words to that effect. S.G. said that he did, and then he pointed to J. in the picture. After S.G. identified J., Vice Principal Spoden told S.G., "When something happens to you, you can come and talk to us, you can talk to me, or come to the office and let us know that way we can do something," or words to that effect. S.G. simply said, "ok." Vice Principal Spoden told Mrs. Gutierrez that she would talk to J. and that the situation would be resolved

1  and that it would not occur again. Vice Principal Spoden also told Mrs. Gutierrez
2  that she would let her know what she found.

3        62.    Just a few days later, on October 23, 2023, J.'s harassment of S.G.
4  escalated. That day, J. pushed S.G. off a swing on the upper grade playground while
5  calling him a crybaby, and saying You're a little girl. S.G. injured his head and was
6  left with visible bruises and emotional injuries.

7        63.    No adult witnessed the event nor was any adult nearby. S.G. had to
8  look for an adult to assist him. When he found an adult with whom he was not
9  familiar, he attempted to explain that he had been pushed off the swing. S.G.
10 reported to his parents that the adult could not understand him. This adult took him
11 to the nurse's office. S.G. also informed the nurse that J. had pushed him off the
12 swing. The school nurse called Mrs. Gutierrez and reported that S.G. had a small
13 accident and had fallen off the swing. She did not tell Mrs. Gutierrez that J. had
14 pushed him off the swing. The school nurse also told Mrs. Gutierrez that S.G. was
15 fine, that he was in the office and that they were going to wait to see if S.G. wanted
16 to stay at school. Mrs. Gutierrez also spoke with S.G. during this call; crying, he
17 told his mother that J. pushed him off of the swing. Mrs. Gutierrez informed the
18 school nurse that she wanted to speak with the adult who had taken S.G. to the
19 office. The nurse told Mrs. Gutierrez that she would have the front desk office call
20 the adult so that when Mrs. Gutierrez arrived to pick up her son she could speak
21 with them. Mrs. Gutierrez left to pick S.G. up from school.

22       64.    While on her way to pick up her son, the nurse called Mrs. Gutierrez
23 back to inform her that S.G. reported that had a severe headache. Mrs. Gutierrez
24 told the nurse that she was already on her way.

25       65.    When Mrs. Gutierrez arrived to pick up S.G., she went to the main
26 office and explained that she was there to pick S.G. up who was in the nurse's
27 office. Mrs. Gutierrez then walked into the nurse's office. Mrs. Gutierrez spoke
28 with S.G. again and asked him what had happened. He said that he had been on the

swings in the upper-grade playground and that J. had pushed him off of the swing. Mrs. Gutierrez was not aware that kindergartners, like S.G., were permitted to play on the upper-grade playground. She believed that S.G. was limited to playing in the kindergarten playground, which is surrounded by a fence.

66.    Mrs. Gutierrez asked the school nurse what had happened and expressed her concern as to why S.G. was not on the kindergarten playground and why no adult had witnessed the incident. The nurse explained that she could not answer the question about the playground. The nurse reported that there were staff members who were supposed to be supervising the playground, but that they did not have enough people to watch all of the students, and so they had to turn in all directions and were not looking in S.G.'s direction when the incident occurred. Mrs. Gutierrez felt that the school nurse did not take the situation seriously.

67.    Despite her request to speak to the unknown adult who had walked S.G. to the office, that person was not present. The District did not provide S.G.'s parents with an incident report.

68.    After this incident, Mrs. Gutierrez called the Golden Hills office several times and request to speak to Principal Bailey or Vice Principal Spoden to talk about the ongoing harassment and bullying but she never received a call back.

69.    On October 26, 2023, the harassment became even worse. During recess, while playing in the upper-grade playground, J. pushed S.G. from the top of a slide. S.G. heard J. tell him, "Bye-bye you're going to fly," or words to that effect before J. pushed him. S.G. flew off the top of the slide for several feet and landed directly on the hard ground below.

70.    S.G. sustained severe injuries including that he was knocked unconscious and broke his arm. Another student witnessed the event. No school staff noticed that he had been pushed off the slide or that he was unconscious.

71.    After an unknown period of time, S.G. regained consciousness. He was laying on the ground and in a lot of pain. He began screaming and crying but

1  no one heard him. Still crying, S.G. got up and began searching for help.

2      72.    Another student heard and/or saw S.G and walked with him towards

3  the office. Only once they were near the office did they encounter an adult, whom

4  S.G. did not recognize. The fellow student left and the adult finished walking him

5  to the office.

6      73.    Mrs. Gutierrez received a call from the school nurse asking her to pick

7  S.G. up because he had an accident on the playground. The nurse told Mrs.

8  Gutierrez that it was not an emergency. Mrs. Gutierrez asked for information about

9  what had happened, but the nurse told her that she did not know anything more

10  about what had happened. A few minutes later, the nurse called Mrs. Gutierrez back

11  and asked if she was already on her way. Mrs. Gutierrez told her that she was about

12  to enter the school's parking lot. This time the nurse told Mrs. Gutierrez that it was

13  an emergency, that she had her two other daughters with her in the office, and that

14  she needed to take S.G. to the emergency room. Mrs. Gutierrez asked why it was an

15  emergency. It was only then that the nurse then told Mrs. Gutierrez that S.G. had

16  fallen off the slide but that she did not have any other information. Mrs. Gutierrez

17  also requested that the school provide her with an incident report of what had

18  happened that day.

19      74.    While Mrs. Gutierrez waited in the car, including because she was

20  experiencing hip pain, S.G.'s grandmother and father went to the office to pick up

21  S.G. S.G. grandmother overhead the nurse say "shut up" as there were lots of

22  screaming coming from S.G. and his sister (S.G.'s sister also has autism and tends

23  to mimic). S.G.'s grandmother believes that the school nurse directed that comment

24  to S.G. and his sisters. Unable to communicate effectively with the nurse, and

25  concerned about S.G.'s well-being, S.G.'s grandmother and father left and

26  immediately took S.G. to the emergency room.

27      75.    On the drive to the emergency room, S.G. was pale, screaming, crying,

28  and fainted twice presumably from pain. He also complained that his head, his

fingers and elbow hurt. At the emergency room, Mrs. Gutierrez was informed that S.G. had, among other things, a contusion on his head, back and ribs.

76.    S.G. was sent home with pain medication but he continued to experience severe pain and emotional distress. The next day, among other things, S.G. had a fever and was vomiting.

77.    On October 28, 2023, concerned about S.G.'s continued pain and new symptoms, his parent took him to the emergency room at Loma Linda Children's Hospital. There, he received, among other things, additional X-rays, which revealed that he had a closed fracture of the proximal end of his right humerus. His arm was put in a partial cast. Among other things, Mrs. Gutierrez was told S.G. could not engage in physical activity until at least December 10, 2023. S.G. remained in a partial cast for approximately six weeks due to his injuries. He developed several sores on his arm because of the cast. He was also in pain from contusions on his head and his ribs as a result of J. pushing him off the slide. S.G continues to experience pain when engaged in physical activities and when it is cold outside.

78.    On October 30, 2023, Mrs. Gutierrez and S.G. went to the office to speak with Principal Bailey about the ongoing bullying. The front office informed Mrs. Flores that Principal Bailey was busy and instead directed her to speak with Vice Principal Spoden. S.G. told Vice Principal Spoden that he is bullied every day by J. and that J. pushed him off the swing and the slide. Again Vice Principal Spoden asked S.G. to identify who was harassing him. S.G. again identified J., in a set of pictures provided by Vice Principal Spoden, as the person who bullied him. Vice Principal Spoden questioned S.G. several times, asking if he was sure if J. was the person who was harassing him. He unhesitatingly repeated that J. was the person who had bullied him. Mrs. Gutierrez also gave Vice Principal Spoden the name of the child, D. (last name unknown), who had witnessed the incident on the slide. Vice Principal Spoden said that she would speak with D. and all of the students in S.G.'s classroom to see if they had witnessed what had happened on the

slide because no adult had witnessed what had occurred. Vice Principal Spoden said that once someone who could clarify what had happened that she would then speak with J. And that if J. had pushed S.G. off the slide that there would be consequences for him. Vice Principal Spoden also stated that they had a program in which J. and S.G. could participate wherein J. could ask for forgiveness and maybe the two could end up as friends. Concerned for S.G.'s safety, including his physical and mental well-being Mrs. Gutierrez stated that she needed additional time to consider this program. District staff did not follow up with Mrs. Gutierrez about this program.

79.    Mrs. Gutierrez also asked Vice Principal Spoden why S.G. in the upper-playground where the slides were larger much farther from the ground than in the kindergarten playground. Vice Principal Spoden said the school staff allow kindergartners to play in the upper-playground because they wanted the kindergartners to better prepare them for first grade. Mrs. Gutierrez asked why S.G. and other kindergartners were not being supervised when they were in the more dangerous playground. Vice Principal Spoden informed her that there was not enough staff to watch all the students.

80.    On October 31, 2023, Vice Principal Spoden called Mrs. Gutierrez. Vice Principal Spoden reported that no further action could be taken because no one saw the incident on the slide but that they would remain vigilant in case something else occurred. Mrs. Gutierrez pointed out that D. had witnessed J. pushed S.G. off the slide, but Vice Principal Spoden said that when she spoke with the student that he claimed that he had not witnessed S.G. being pushed off the slide. Vice Principal Spoden also stated to Mrs. Gutierrez that it could not have been J. that pushed S.G. off the slide because J. had been asleep all day in his class.[2] Mrs. Gutierrez asked

---

[2] Later the District's alleged investigation would contradict this assertion. In the District's investigation, it was noted that student reported that he witnessed S.G. being pushed off the slide.

1  Vice Principal Spoden to speak with D. again individually. Vice Principal Spoden
2  agreed.

3      81.    A few hours later, Vice Principal Spoden called Mrs. Gutierrez that
4  she had spoken with D. and that he told her that he could not remember. The
5  District took no further action to stop or address the bullying.

6      82.    On or about November 2023, Tae Mauk, Direct of Special Education
7  ("Mr. Mauk") called Mrs. Gutierrez and asked for a meeting at Golden Hills.
8  During this meeting, Mr. Mauk, Principal Bailey, and S.G.'s parents were present.
9  S.G.'s parents, among other things, explained the physical and verbal harassment
10 that J. inflicted on S.G. Mr. Mauk claimed that he would have someone watch S.G.
11 more closely so that they would "not hurt him again," or words to that effect. Yet
12 the bullying and harassment continued.

13     83.    Mrs. Gutierrez also continued to express her concerns about J. bullying
14 S.G. to Ms. Juergens. In response, however, Ms. Juergens would simply say that
15 S.G. was a joy in her classroom and that the students in her class missed S.G. Ms.
16 Juergens dismissed her concerns, did not investigate the allegations of bullying, and
17 did not offer any other support for S.G.

18     84.    J. continued to physically and verbally bully S.G.; J.'s friends would
19 often laugh at S.G. during these incidents. S.G. continued to suffer emotionally and
20 physically and started to have increased absences at school.

21     85.    Meanwhile S.G.'s parents continued to express their concerns about
22 the ongoing physical and verbal bullying that S.G. was enduring on a near daily
23 basis, but to no avail. Mrs. Guiterrez explained to the school staff that S.G. was
24 missing school because of his mental health that was a result of the bullying, but the
25 District and its staff continued to do little to nothing to address the bullying.

26     86.    Around January 2024, S.G. began private therapy to address the
27 negative effects on his mental health from the ongoing bullying, harassment, and
28 discrimination. Cynthia Smith, Licensed Therapist with College Community

Services in Tehachapi, diagnosed S.G. with PTSD and generalized anxiety disorder and recommended that he change schools. She also confirmed his previous autism diagnosis. S.G. continued to receive therapy from Miguel Dorador, Recovery Coordinator at College Community Services.

87.    On or around January 17, 2024, in the morning when Mrs. Gutierrez brought S.G. to school, he had an anxiety attack outside the Golden Hills front office and began screaming that the bully was going to hurt him. Mrs. Gutierrez then managed to get S.G. to enter the office where she asked for assistance. The two women in the front desk told Mrs. Gutierrez that the school had trained staff who could support S.G. But when Mrs. Gutierrez stayed a little longer to see what would happen, she witnessed two individuals essentially drag S.G. by his arms to the classroom while he continued to scream. Mrs. Gutierrez complained, but in response the school staff in the office said that this was their typical way of handling situations like this, that she should not be alarmed by this situation, and that S.G. would be fine. After this, the office staff told Mrs. Gutierrez that "[she] could leave now."

88.    The same day of the panic attack, when S.G. came back home, he smelled of urine. Mrs. Gutierrez discovered he had had a major toileting accident at school, but no reported it to her. S.G. reported to his parents that he had started to avoid going to the restroom at school because he was scared that J. would hurt him.

89.    On January 23, 2024, Mrs. Gutierrez emailed Principal Bailey and informed her that S.G. was very traumatized because the District refused to address the bullying and that he was now suffering from, among other things, anxiety attacks. That same day, Principal Bailey responded via email and requested among other things a meeting to discuss Mrs. Gutierrez's concerns and highlighted the need for more information about the bullying claiming that no specific incidents had been reported.

90.    The next day, on January 24, 2024, Principal Bailey called Mrs. Gutierrez. Mrs. Gutierrez understood from their conversation that Principal Bailey did not believe that any bullying had occurred, in part because Principal Bailey reported that bullying involves one child being much older in age or bigger in size, that kindergarteners just naturally play rough, and that what S.G. had endured was normal childhood interactions that do not require intervention. Principal Bailey offered no plan to investigate or otherwise appropriately address the bullying or address S.G.'s deteriorating physical and mental health. Instead, Principal Bailey suggested that S.G. change schools. During this call, Mrs. Gutierrez also informed Principal Bailey that, among other things, S.G. had been diagnosed with PTSD and S.G.'s therapist recommended that S.G. needed a new school placement because the District refused to effectively address the peer-to-peer harassment. Principal Bailey repeated that she did not believe that it was bullying and minimized what had occurred to S.G.

91.    On January 27, 2024, Mrs. Gutierrez wrote an email to Principal Bailey to confirm her understanding of their conversation. Principal Bailey responded to Mrs. Guiterrez on January 28, 2024 via email wherein Principal Bailey confirmed that the standards of bullying were as she defined them in the call but denied saying that S.G. was not being bullied. Principal Bailey further stated that the school was willing to offer help in the general sense but did not provide a specific plan to address the bullying. She also opined that S.G.'s anxiety might instead be the result of his absences because "after many days of absences, young students often have anxiety returning to school. S.G. has missed many days of school, so it could be contributing to his feelings." In a subsequent email, Principal Bailey stated that the District had investigated Mrs. Gutierrez's concerns but that investigation that the other student was involved[.]"

92.    In the meantime, among other things, S.G.'s physical and mental health continued to decline. S.G. expressed suicidal thoughts and told his mother

1   that he thought the school personnel were treating him in a hostile manner. In

2   addition, he began to suffer extreme gastrointestinal distress because of the

3   bullying.

4      93. On February 22, 2024, S.G.'s parents had an in-person meeting at

5   Golden Hills with Principal Bailey, Vice Principal Spoden, Ms. Juergens, and

6   Maria (an interpreter). At the meeting, Principal Bailey denied that S.G. was being

7   bullied and minimized what S.G. had been enduring. For example, Principal Bailey

8   stated that kindergarteners had bad memories and that "[she] could not even

9   remember what she ate in the morning and how could S.G. remember what

10  happened days before," or words to that effect. Further, when Mrs. Gutierrez

11  informed them that S.G. had been diagnosed with PTSD, Principal Bailey laughed

12  at Mrs. Gutierrez and said, "Oh my God I can't believe that a six-year-old knows

13  what PTSD is, I'm 50 years old and I have PTSD," or words that effect. Mr.

14  Guitierrez also informed them that S.G. had suicidal ideations. Principal Bailey

15  simply stated, "oh no." And Ms. Juergens stated that, "He is such a good kid and

16  with a good heart. Tell him not to think that," or words to that effect. S.G.'s parents

17  also reported that S.G. had more toileting accidents because of the bullying and

18  harassment. For example, Mrs. Gutierrez informed them that in addition to the

19  school toileting accidents, he was also having more toileting accidents at night.

20  Principal Bailey responded that "five year old kids still have accidents at that age

21  and that it was very normal," or words to that effect.

22     94. During this same meeting, Mrs. Gutierrez again reported that bullying

23  is a general problem at Golden Hills. She pointed out that she has two other

24  children in the school who also have autism and who are also constantly bullied.

25  Principal Bailey denied that were being bullied. Rather, instead of looking into this

26  further, Principal Bailey stated that Mrs. Gutierrez' children were "too soft" and

27  that they needed to "toughen up" because the "world is cruel," or words to that

28  effect. Principal Bailey offered no meaningful options or plan that would keep S.G.

safe while at school. For example, Mrs. Gutierrez asked about home hospital instruction, but was told that he could not get his IEP services during home hospital. Mrs. Gutierrez then informed Principal Bailey that she would have to withdraw S.G. from the District given the bullying and trauma that he has endured and lack of plan to stop it.

95.    S.G. also started to have increased absences at school. Rather than address the root cause of the problem, the peer-to-peer harassment, the District responded by sending home threatening letters about his absences.

96.    S.G.'s parents were forced to make the difficult decision to take him out of the District altogether to ensure his safety and any possible chance of learning. They placed him at Accelus Academy near the end of February 2024, a private online school, until they could find a more appropriate placement.

**2024-2025 School Year**

97.    On or about August 13, 2024, S.G. began attending Heartland Charter School in Kern County. This program has both an online and in person components. While he is not being bullied anymore, S.G. remains traumatized over what happened while at Golden Hills Elementary School.

98.    S.G. is the victim, *inter alia,* of an ongoing pattern and practice of the Defendants failing to appropriately address the significant verbal and physical harassment hat he has endured while a student at Golden Hills. This pattern and practice of neglect and failure to accommodate S.G.'s needs as a student with disabilities is sufficiently severe and pervasive to, among other things, constitute intentional discrimination against S.G. and create an unsafe and hostile learning environment. As discussed herein, J. has repeatedly bullied S.G., including taunting him on the basis of disability and perceived gender, on a near daily basis and has physically assaulted him several times. Defendants have failed to, among other things, provide an adequate play structure, supervision, oversight, and training of employees to ensure that students like S.G. are not injured or bullied and that any

injuries are quickly identified, investigated, and prevented in the future. Defendants' did not report the abuse that S.G. was experiencing to his parents.

99.    As a direct and proximate result of Defendants' actions and inactions, S.G. has suffered and continues to suffer from severe physical, psychological, and emotional harm. He has also suffered the loss of educational opportunities and future income and loss of civil rights. Among other things, S.G. suffered and continues to suffer physical pain, embarrassment, and extreme emotional distress. S.G. has had and continues to have suicidal ideations, PTSD, toileting accidents, nightmares, generalized anxiety, panic attacks, trouble sleeping and eating, experienced significant bouts of vomiting and diarrhea, and has withdrawn from doing things that he previously enjoyed and does not trust other children.

100.   S.G. must now also take medication for anxiety and depression, and as discussed herein, in January 2024, S.G. was diagnosed with PTSD and generalized anxiety disorder. S.G. has been prescribed therapy sessions to help him deal with his PTSD and anxiety and continues to attend these sessions. He also has painful recollections of the slide and swing incidents and being dragged by school staff. He wakes up screaming in the night crying, "Tell my bully to stop hitting me." He continues to live in fear of J.  He has also regressed socially, academically, and emotionally. In addition, while S.G. has had toileting issues since he began school, his frequency of toileting accidents tripled after he was assaulted on the slide in October 2023. However, the District declined to do anything to help S.G. with his toileting needs during his time at school- not even to change his clothes.

101.   Additionally, S.G. has been and continues to be excluded and deprived from having equal and/or meaningful access to the programs, services, and activities offered by Defendants. Defendants' acts and omissions are ongoing as S.G. has been unable to return to school; they constitute a continuing violation of S.G.'s rights, for which Defendants' are liable.

102.   Further, S.G. is also the victim of the District's failure to properly train its staff to effectively address school bullying for students like S.G. and has also failed to maintain safe premises, to properly supervise S.G., or to warn, train, or investigate incidents of bullying and peer-to-peer harassment. Defendants' also failed to exercise reasonable care, when they, among other things, failed to properly supervise S.G. on the playground equipment; allowed S.G. to play on a playground meant for older students instead of the kindergarten playground; failed to maintain a soft surface below the slide which would have better absorbed the hard impact of S.G.'s fall; and failed to warn S.G.'s parents of the dangerous condition of the playground, including that kindergartners could play on the upper-playground. Defendants have caused S.G. to suffer, *inter alia*, significant violations of his statutory, common law, and constitutional rights, loss of educational opportunity, severe physical and emotional distress and injury.

## <u>FIRST CLAIM FOR RELIEF</u>

### **VIOLATIONS OF TITLE II OF ADA, 42 U.S.C. § 12101 *et seq*.**

#### *(Defendants Tehachapi USD and Superintendent Lynch)*

103.   Plaintiff incorporates by reference all preceding paragraphs.

104.   Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1)-2).

105.   Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

106.   S.G. is and has been, at all times relevant herein, an individual with a disability under the ADA. 42 U.S.C. § 12102. His disabilities substantially limit one or more major life activities, including communicating, learning, neurological, and

1    interacting with others.

2        107.   As a school-aged child who lives in the District, he is and was

3    qualified to participate in Defendants' educational programs and services. 42 U.S.C.

4    § 12131(2).

5        108.   At all times relevant to this action, the District, and each school within

6    the District, including Golden Hills, is and was a public entity within the meaning

7    of the ADA. Defendant Superintendent Lynch is an official responsible for running

8    and/or supervising the operations of the District. 42 U.S.C. § 12131(1).

9        109.   At all times relevant to this action, the District, and each school within

10   the District, including Golden Hills, were and are recipients of federal and state

11   funding.

12       110.   The acts and omissions of the District and Superintendent Lynch in his

13   official capacity as described above, which include the acts and omissions of

14   Golden Hills school officials and employees, have and are violating Plaintiff's

15   rights under the ADA, 42 U.S.C. § 12132, and its implementing regulations, 28

16   C.F.R. Pt. 35, by discriminating against Plaintiff on the basis of his disabilities,

17   including by:

18       a.  Failing to make reasonable modification to policies, practices, and

19           procedures avoid discrimination against S.G.;

20       b.  Utilizing methods of administration that have the effect of defeating or

21           substantially impairing the accomplishments of the objectives of

22           Defendants' programs, services and activities with respect to S.G.; and

23       c.  Denying S.G. an opportunity to participate in and benefit from

24           educational services that is equal to that afforded to other students.

25       111.   In addition, through the acts and omissions of the District and

26   Superintendent Lynch in his official capacity as described above, which include the

27   acts and omissions of Golden Hills school officials and employees, have and are

28   violating Plaintiff's rights under the ADA, 42 U.S.C. § 12132, and its implementing

1  regulations, 28 C.F.R. Pt. 35 by subjecting S.G. to ongoing disability-based
2  harassment that is so severe and pervasive that it created a hostile learning
3  environment.

4      112.    The District, Superintendent Lynch in his official capacity, District
5  officials and employees, including but not limited to Golden Hills school officials
6  and employees, had actual knowledge that Plaintiff was being harassed at Golden
7  Hills by J. on account of his disabilities and that J.'s peer disability harassment of
8  Plaintiff was so severe, pervasive, and offensive that it effectively deprived Plaintiff
9  of the right and full and equal access to the educational benefits, opportunities,
10  services, programs, and activities offered by the District.

11      113.    The District, Superintendent Lynch in his official capacity, District
12  officials and employees, including but not limited to Golden Hills school officials
13  and employees, acted with deliberate indifference to this known peer disability
14  harassment of Plaintiff at Golden Hills. The response of District officials and
15  employees, including but not limited to Golden Hills school officials and
16  employees, to the known peer disability harassment of Plaintiff at Golden Hills was
17  clearly unreasonable in light of all the known circumstances.

18      114.    The deliberate indifference of the District, Superintendent Lynch in his
19  official capacity, District officials and employees, including but not limited to
20  Golden Hills school officials and employees, to the known peer disability
21  harassment of Plaintiff at Golden Hills was the actual, direct, and proximate cause
22  of the injuries suffered by Plaintiff as alleged herein.

23      115.    Defendants committed the acts and omissions alleged herein with
24  intent and/or deliberate indifference to S.G.'s rights. Defendants have further
25  demonstrated a deliberate indifference that harm to Plaintiff's federally protected
26  rights under the ADA was substantially likely, and failed to act upon that likelihood.

27      116.    Defendants at all times have knowns or should have known that S.G.
28  was a student with disabilities and required modifications.

117.   The acts and omissions of the District and Superintendent Lynch in his official capacity as described above, which include the acts and omissions of Golden Hills school officials and employees, have caused and will continue to cause S.G. to suffer irreparable harm, and he has no adequate remedy at law.

118.   Further, as a direct and proximate result of Defendants aforementioned acts and omissions, S.G. has suffered injury as alleged herein, including but not limited to, denial of the benefits of a public education. Moreover, as direct and proximate result of the foregoing, S.G. has suffered, and continues to suffer, among other things, physical harm, emotional harm, humiliation, hardship and anxiety, loss of his civil rights, and the loss of equal educational opportunities solely on the basis of his disability.

119.   Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiff seeks declaratory and injunctive relief, damages, and reasonable attorneys' fees and costs incurred in bringing this action as appropriate and permitted by law.

## SECOND CLAIM

### VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. §§ 794, *et seq.*

#### (Defendants Tehachapi USD and Superintendent Lynch)

120.   Plaintiff incorporates by reference all preceding paragraphs.

121.   Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States. . . shall, solely by reason of [their] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

122.   Plaintiff S.G. is and has been at all times relevant herein, a qualified individual with a disability within the meaning of Section 504. His disabilities substantially limit one or more major life activities, including communicating, learning, neurological, and interacting with others.

123. Defendants are recipients of federal funding.

124. As a school-aged child who lives in the District, he is and was otherwise qualified to participate in Defendants' programs and services and therefore meets essential eligibility requirements. *See* 29 U.S.C. § 794(b); 28 C.F.R. § 41.32.

125. At all times relevant to this action, the District, and each school within the District, including Golden Hills, were and are recipients of federal and state funding.

126. At all times relevant to this action, Defendants operated a "program or activity" within the meaning of Section 504.

127. The acts and omissions of the District and Superintendent Lynch in his official capacity as described above, which include the acts and omissions of Golden Hills school officials and employees, violated and are violating Plaintiff's rights under Section 504 by discriminating against Plaintiff solely by reason of his disabilities.

128. Defendants' acts and omissions as herein alleged have excluded and denied Plaintiff the benefits of their programs and services solely by reason of his disabilities. Solely by reason of his disabilities, S.G. has been excluded from participation in, denied the benefit of, and subjected to discrimination in his attempts to receive meaningful and equal access to the facilities, programs, services, and activities offered by Defendants in violation of Section 504. 29 U.S.C. § 794, *et seq.*, and its implementing regulations at 34 C.F.R. Pt. 104 (U.S. Department of Education) and 28 C.F.R. 42.501 *et seq.* (U.S. Department of Justice).

129. The Defendants' acts and omissions violating S.G.'s rights under the ADA also violate his rights under Section 504 (*see* First Claim for Relief, *supra*). Defendants' acts and omissions have also violated Section 504 by subjecting S.G. to ongoing disability-based harassment that is so severe and pervasive that it

1    created a hostile learning environment.

2        130.   The District, Superintendent Lynch in his official capacity, District

3    officials and employees, including but not limited to Golden Hills school officials

4    and employees, had actual knowledge that Plaintiff was being harassed at Golden

5    Hills by J. on account of his disabilities and that J.'s peer disability harassment of

6    Plaintiff was so severe, pervasive, and offensive that it effectively deprived Plaintiff

7    of the right and full and equal access to the educational benefits, opportunities,

8    services, programs, and activities offered by the District.

9        131.   The District, Superintendent Lynch in his official capacity, District

10   officials and employees, including but not limited to Golden Hills school officials

11   and employees, acted with deliberate indifference to this known peer disability

12   harassment of Plaintiff at Golden Hills. The response of District officials and

13   employees, including but not limited to Golden Hills school officials and

14   employees, to the known peer disability harassment of Plaintiff at Golden Hills was

15   clearly unreasonable in light of all the known circumstances.

16       132.   The deliberate indifference of the District, Superintendent Lynch in his

17   official capacity, District officials and employees, including but not limited to

18   Golden Hills school officials and employees, to the known peer disability

19   harassment of Plaintiff at Golden Hills was the actual, direct, and proximate cause

20   of the injuries suffered by Plaintiff as alleged herein.

21       133.   Defendants committed the acts and omissions alleged herein with

22   intent and/or deliberate indifference to S.G.'s rights. Defendants have further

23   demonstrated a deliberate indifference that harm to Plaintiff's federally protected

24   rights under Section 504 was substantially likely, and failed to act upon that

25   likelihood.

26       134.   Defendants at all times have knowns or should have known that S.G.

27   was a student with disabilities and required modifications.

28       135.   The acts and omissions of the District and Superintendent Lynch in his

official capacity as described above, which include the acts and omissions of Golden Hills school officials and employees, have caused and will continue to cause S.G. to suffer irreparable harm, and he has no adequate remedy at law.

136.    Further, as a direct and proximate result of Defendants aforementioned acts and omissions, S.G. has suffered injury as alleged herein, including but not limited to, denial of the benefits of a public education. Moreover, as direct and proximate result of the foregoing, S.G. has suffered, and continues to suffer, among other things, physical harm, emotional harm, humiliation, hardship and anxiety, loss of his civil rights, and the loss of equal educational opportunities solely on the basis of his disability.

137.    Pursuant to 29 U.S.C. § 794(a), Plaintiff seeks declaratory and injunctive relief, damages, and reasonable attorneys' fees and costs incurred in bringing this action as appropriate and permitted by law.

## THIRD CLAIM

**Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 – 1688**

***(Against Defendants Tehachapi USD and Superintendent Lynch)***

138.    Plaintiff incorporates by reference all preceding paragraphs.

139.    Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." U.S.C.A. § 1681 (West). An educational institution's failure to address student-to-student gender harassment is a violation of Title IX.

140.    At all times relevant to this action, Defendants were recipients of federal funding and were an educational institution within the meaning of Title IX. U.S.C.A. § 1681

141.    The harassment faced by Plaintiff in which his arm was broken and knocked unconscious by his peers on the basis of his perceived gender identity was so severe that Plaintiff became suicidal and had to stop attending in-person classes.

142.    The harassment faced by S.G. was so severe, pervasive, and objectively offensive that it effectively barred him from accessing his educational opportunities or benefits.

143.    Defendants were informed several times by both S.G. and his parents of the peer-to-peer harassment.

144.    In engaging in and performing the acts, omissions, and conduct alleged above, employees of the District, who at minimum had authority to address the harassment faced by S.G. and to institute corrective measures on behalf of the District, had knowledge of the peer-on-peer harassment and discrimination alleged herein and failed to adequately respond.

145.    Defendants were deliberately indifferent to the harassment to the extreme of blaming S.G. for the harassment and telling his parents that he needed to be less "soft."

146.    Defendants failed to follow their own policies with regard to the investigation of the peer-on-peer gender-based harassment complaint.

147.    Moreover, the response of the District and its employees to the harassing and discriminatory conduct was clearly unreasonable and ineffective in light of the known circumstances.

148.    As an actual, direct, and proximate result of the wrongful conduct of Defendants, each of them, alleged herein, S.G. is entitled to recover general and special damages, including but not limited to severe emotional injuries and distress, medical expenses.

149.    Plaintiff seeks declaratory and injunctive relief, damages, and pursuant to 20 U.S.C. §§ 1681-1688, and 42 U.S.C. § 1988 reasonable attorneys' fees and costs incurred in bringing this action as appropriate and permitted by law.

//

//

//

# FOURTH CLAIM

**Violation of the Fourteenth Amendment to the United States Constitution**

**Equal Protection Against Discrimination based on Gender, 42 U.S.C. § 1983**

(*Against Defendants Bailey and Spoden*)

150.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

151.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which is actionable under 42 U.S.C. section 1983, prohibits state actors from depriving individuals of their constitutional right to equal protection.

152.   Defendants, acting under the color of state law, have violated Plaintiff's rights under the Equal Protection clause by creating a hostile and discriminatory environment based on Plaintiff's gender and disability.

153.   Defendants' conduct as described herein violated Plaintiff's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to be free of gender and disability-based harassment

154.   As a direct and proximate result of Defendants' unlawful actions as described herein, Plaintiff has suffered significant harm, including emotional distress, reputational damage, and loss of opportunities.

155.   Defendants' acted with deliberate indifference with respect to the gender and disability-based peer-to-peer harassment suffered by Plaintiff.

# FIFTH CLAIM FOR RELIEF

**VIOLATIONS OF CALIFORNIA GOVERNMENT CODE § 11135 *et seq.***

(*Defendants Tehachapi Unified School District and Superintendent Lynch*)

156.   Plaintiff incorporates by reference each all preceding paragraphs.

157.   California Government Code § 11135 and the regulations promulgated thereunder prohibit discrimination under, and the denial of full and equal access to the benefits of, state-funded programs and activities on the basis of sex or

disability. Specifically, California Government Code § 11135 provides that "No person in the State of California shall, on the basis of sex [or] disability [], be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Cal. Gov't Code § 11135.

158.   Violations of the ADA constitute violations of Government Code § 11135(b).

159.   The District, and each school within the District, including Golden Hills, is a state agency that receives state financial assistance for purposes of California Government Code Section 11135.

160.   At all times relevant to this action, Plaintiff S.G. was and is a qualified individual within the meaning of California law. Cal. Gov't Code § 12926. As a student with disabilities and perceived gender nonconforming attributes/sex, S.G. is entitled to California law protections against discrimination on the basis of sex and/or disability. *Id.*

161.   The acts and omissions of the District and Superintendent Lynch, which include the acts and omissions of Golden Hill school officials and employees, have violated and are violating Plaintiff's rights under California Government Code § 11135 by discriminating on the basis of his disabilities and sex. Further, Defendants' acts and omissions, including its discriminatory practices as herein alleged denied and continue to deny S.G., *inter alia*, full and equal access to the services, programs and activities offered by Defendants to students at Golden Hills in violation of California Government Code § 11135.

162.   Defendants have also violated and are violating Government Code Section § 11135(b) in that the conduct alleged herein constitutes a violation of the

ADA and the regulations promulgated thereunder. (*see* First Claim for Relief, *supra*).

163.  The District, Superintendent Lynch in his official capacity, District officials and employees, including but not limited to Golden Hills school officials and employees, had actual knowledge Plaintiff was being harassed at Golden Hills by J. on account of his disabilities and sex and that J.'s peer disability and sex harassment of Plaintiff was so severe, pervasive, and offensive that it effectively deprived Plaintiff full and equal access to the educational benefits, programs, activities, and opportunities offered by the District.

164.  Defendants subjects S.G. to disability and sex-based harassment that was so severe and pervasive that it creates a hostile learning environment.

165.  Defendants have also violated Government Code § 11135 by discriminating against S.G. in violation of the ADA (*see* First Claim for Relief, *supra*).

166.  The District, Superintendent Lynch in his official capacity, District officials and employees, including but not limited to Golden Hills school officials and employees, acted with deliberate indifference to this known peer disability and sex harassment of Plaintiff at Golden Hills. The response of District officials and employees, including but not limited Golden Hills school officials and employees, to the known peer disability and sex harassment of Plaintiff at Golden Hills was clearly unreasonable in light of all the known circumstances.

167.  The deliberate indifference of the District, Superintendent Lynch in his official capacity, District officials and employees, including but not limited to Golden Hills school officials and employees, to the known peer disability and sex harassment of Plaintiff at Golden Hills was the actual, direct, and proximate cause of the injuries suffered by Plaintiff as alleged herein.

//

168.   Defendants actions as alleged herein have caused and will continue to S.G. to suffer irreparable harm, and he has no adequate remedy at law. Because Defendants' discriminatory conduct is ongoing, both declaratory and injunctive relief are appropriate. S.G. is also entitled and seeks reasonable attorneys' fees and costs incurred in bringing this action.

**SIXTH CLAIM FOR RELIEF**

**FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT IN PUBLIC SCHOOL, Cal. Ed. Code §§ 200, 201, 220, 230**

***(Defendant Tehachapi USD and Superintendent Lynch)***

169.   Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

170.   California Education Code § 200 states in relevant part that "[i]t is the policy of the State of California to afford all persons in public schools, regardless of their disability, gender, gender identity, [or] gender expression…equal rights, and opportunities in the educational institutions of the state."

171.   California Education Code § 201(a) states in relevant part that "[a]ll pupils have the right to participate fully in the educational process, free from discrimination and harassment."

172.   California Education Code § 201 (f) states in relevant part that "California's public schools have an affirmative obligation to combat racism, sexism, and other forms of bias, and a responsibility to provide equal educational opportunity." (Cal. Ed. Code § 201(b).) Further, "[i]t is the intent of the Legislature that each public school undertake educational activities to counter discriminatory incidents on school grounds and, within constitutional bounds, to minimize and eliminate a hostile environment on school grounds that impairs the access of pupils to equal educational opportunity."

173.   California Education Code § 220 prohibits, *inter alia,* discrimination on the basis of disability "in any program or activity conducted by an educational

1   institution that receives, or benefits from, state financial assistance or enrolls pupils

2   who receive state student financial aid."

3       174.   California Education Code § 230 prohibits "on the basis of sex,

4   harassment or other discrimination among persons, including, but not limited to,

5   students."

6       175.   California school districts have an affirmative duty to adopt procedures

7   for preventing acts of bullying based upon, in relevant part, disability and gender.

8   (Cal. Ed. Code § 234, *et seq.*)

9       176.   The California Education Code defines "bullying" as "[a]ny  severe or

10  pervasive physical or verbal conduct...directed toward one or more pupils that has

11  or can be reasonably predicted to have the effect of ... [c]ausing a reasonable pupil

12  to experience a substantially detrimental effect on the pupil's physical or mental

13  health." (Cal. Ed. Code § 48900 (r).)

14      177.   S.G. is an individual with a disability within the meaning of California

15  Education Code § 220.

16      178.   Defendant District receives financial assistance from the State of

17  California.

18      179.   Defendants' failure to have policies in place to appropriately

19  investigate and address complaints of bullying encouraged bullying of S.G. and

20  created a hostile environment of which S.G. was a victim.

21      180.   Defendants' failure to prevent discrimination and harassment against

22  S.G. on the basis of gender and disability, and failure to eliminate a hostile

23  environment by addressing the obvious risk of their dangerous practice to not

24  investigate complaints of bullying were clear and substantial factors directly

25  contributing to S.G.'s injuries.

26      181.    By their actions or inactions, as described above, and in failing to

27  enact an adequate formal or informal policy to ensure that the District is providing a

28  learning environment free from discrimination, harassment, and bullying on the

1  basis of gender and disability, Defendant Lynch denied Plaintiff's rights under

2  Sections 200, 201, 220, and 230 *et seq*. of the California Education Code and the

3  regulations promulgated thereunder.

4      182.   Defendants' actions as alleged herein have caused and will continue to

5  S.G. to suffer irreparable harm, and he has no adequate remedy at law. Because

6  Defendants' discriminatory conduct is ongoing, both declaratory and injunctive

7  relief are appropriate. S.G. is also entitled and seeks reasonable attorneys' fees and

8  costs incurred in bringing this action.

9                    **SEVENTH CLAIM FOR RELIEF**

10          **DANGEROUS CONDITION OF PUBLIC PROPERTY,**

11                   **Cal. Gov. Code § 835,** *et seq.*

12        ***(Defendants Tehachapi USD and Superintendent Lynch)***

13      183.   Plaintiff incorporates by reference the above paragraphs as though

14  fully set forth herein.

15      184.   "A public entity is liable for injury caused by a dangerous condition of

16  its property if the plaintiff establishes that the property was in a dangerous

17  condition at the time of the injury, that the injury was proximately caused by the

18  dangerous condition, that the dangerous condition created a reasonably foreseeable

19  risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or

20  wrongful act or omission of an employee of the public entity within the scope of his

21  employment created the dangerous condition; or [¶] (b) The public entity had actual

22  or constructive notice of the dangerous condition under Section 835.2 a sufficient

23  time prior to the injury to have taken measures to protect against the dangerous

24  condition." (Cal. Gov. Code § 835.)

25      185.   "[A] public entity may be liable for a dangerous condition of public

26  property even when the immediate cause of a plaintiff's injury is a third party's

27  negligent or illegal act (such as a motorist's negligent driving), if some physical

28  characteristic of the property exposes its users to increased danger from third party

1  negligence or criminality." (*Castro v. City of Thousand Oaks* (2015) 239

2  Cal.App.4th 1451, 1457-58.).

3      186.    S.G. was exposed to and harmed by a dangerous condition created by

4  Defendants. Defendants own and control the property on which S.G. was injured.

5      187.    Defendants and employees created an objectively dangerous condition

6  by failing to properly address and investigate S.G.'s complaints of bullying,

7  harassment, and discrimination.

8      188.    This failure created a reasonable foreseeable risk that S.G. would

9  continue to bullied, harassment, and discriminated against without repercussion.

10      189.    The negligent, reckless, and/or wrongful conduct of Defendants

11  further exacerbated this dangerous condition that led to S.G.'s injuries.

12      190.    S.G. was harmed by the failure to address and investigate complaints

13  of bullying, harassment, and discrimination because it allowed J. to continue to

14  harass him, including J pushing S.G. off the swings and slide.

15      191.    The practice of failing to address and investigate complaints of

16  bullying, harassment, and discrimination created a reasonable foreseeable risk that

17  students would get hurt.

18      192.    The practice of failing to address and investigate complaints of

19  bullying, harassment, and discrimination was a clear and substantial factor in

20  causing S.G.'s injuries.

21      193.    Defendants and employees further created an objectively dangerous

22  condition by failing to maintain a soft soil surface below the slide from which S.G.

23  was pushed which would have better absorbed the hard impact of his fall.

24      194.    The failure to maintain a soft soil surface was a clear and substantial

25  factor in causing S.G.'s injuries.

26      195.    Plaintiff seeks declaratory and injunctive relief, damages, and

27  reasonable attorneys' fees and costs incurred in bringing this action as appropriate

28  and permitted by law.

# EIGHTH CLAIM FOR RELIEF

## VIOLATION OF MANDATORY DUTY

### California Government Code § 815.6

### *(Against Defendant Tehachapi USD)*

196.   S.G. incorporates by reference each and every allegation contained in the foregoing paragraphs.

197.   California Government Code § 815.6 provides for liability against a public entity when:

   a)  The entity violates a mandatory duty imposed by an enactment;

   b)  Designed to protect against the risk of a particular injury;

   c)  The plaintiff is in the class of persons protected by the enactment;

   d)  The violation proximately caused the injury to the plaintiff; and

   e)  The public entity did not exercise reasonable diligence in
       discharging its duty established by the enactment.

198.   An enactment includes a federal or state constitutional provision, statue, charter provision, ordinance, or properly adopted regulation.

199.   The statutes cited throughout the various causes of action in this Complaint are all enactments within the meaning of California Civil Code § 815.6.

200.   S.G. was and is in the class of persons protected by these enactments.

201.   The aforementioned enactments constitute mandatory duties within the meaning of California Civil Code § 815.6 and were designed to prevent the kind of injures alleged herein.

202.   Defendants, as described in this Complaint, did not exercise reasonable diligence in discharging their duty established by the enactments enumerated above to refrain from violating Plaintiff's constitutional and statutory rights.

203.   Plaintiff seeks equitable, declaratory and injunctive relief and reasonable attorneys' fees and costs incurred in bringing this action as appropriate and permitted by law.

# NINTH CLAIM

## NEGLIGENT SUPERVISION, HIRING, OR RETENTION

### *(Defendants Tehachapi USD, Superintendent Lynch, Bailey, and Spoden)*

204.   Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

205.   Defendants owed a duty of care to S.G. to adequately and properly investigate, screen, hire, train, monitor, place, evaluate, and supervise their instructors, faculty, employees, and contractors in order to protect their students from harm caused by other students on school property.

206.   Defendants had a legal duty to exercise reasonable care in the supervising "special needs" students in its charge pursuant to California Education code Section 44807 and may be held liable for injuries proximately caused by the failure to exercise such case.

207.   Plaintiff is a "special needs" student whom are particularly vulnerable and dependent upon the Defendants, who, correspondingly, had control over Plaintiff's welfare.

208.   Defendants' breached their duties to S.G. when they failed to supervise Plaintiff and District employees while Plaintiff was on District grounds during the harassment and bullying described herein and failed to ensure the teachers and staff were adequately trained and provided proper supervision.

209.   Defendants were aware of their probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.

210.   Defendants Bailey and Spoden directed and/or participated substantially in the events described herein against S.G. and/or knew of the acts and/or omissions of their subordinates and failed to act to prevent them. Defendants knew, or should have known, it was highly probably that harm would result from their actions and/or omissions described above.

//

211.   California Government Code § 815.2 provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of their employment.

212.   California Government Code section 820 provides that a public employee is liable for injury caused by his act or omission to the same extent as a private person.

213.   The District and Superintendent Lynch in his official capacity were at all  times relevant times the employers of Defendant Bailey and Defendant Spoden.

214.   Defendant Bailey and Defendant Spoden committed the negligent supervision described herein while acting within the scope of their employment. The District and Superintendent Lynch are therefore vicariously liable for these acts.

215.   As a direct and proximate result of the actions of Defendants herein, Plaintiff has and continues to sustain damages according to proof.

## TENTH CLAIM

## NEGLIGENCE

### (Defendants Tehachapi USD, Superintendent Lynch, Bailey, and Spoden)

216.   Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

217.   California law has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations necessary for their protection.

218.   Further, compulsory education laws create a special relationship between students and Defendants, and students have a constitutional guarantee to a safe, secure, and peaceful school environment.

219.    As set forth above, Defendants have breached their duties, statutory and otherwise, to provide Plaintiffs with a learning environment free from discrimination and harassment.

220.   Defendants, and each of them, failed to acknowledge unsafe conditions, and therefore failed to guarantee safe surroundings in an environment in which S.G. was not free to leave, specifically including, but not limited to, failing to appropriately respond to complaints of ongoing, severe, and pervasive bullying and harassment by J.

221.   Defendants also failed to properly supervise S.G. while on the playground, including allowing him to play on the upper-playground, not intended for kindergarteners.

222.   Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences. Defendants knew, or should have known, it was highly probable that harm would result from their actions described herein.

223.   As the actual and proximate cause of Defendant's negligence, Plaintiff suffered and continues to suffer physical abuse and severe emotional distress.

224.   California Government Code section 820 provides that a public employee is liable for injury caused by his act or omission to the same extent as a private person.

225.   California Government Code section 815.2 provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his or her employment.

226.   The District, a public entity, was at all relevant times the employer of Defendant Bailey and Defendant Spoden.

227.    Defendant Bailey and Defendant Spoden committed the acts described herein while acting within the scope of their employment with the District of educating, disciplining, and supervising S.G.

228.   The District is therefore vicariously liable for the actions of its employee acting within the scope of their employment.

229.   As a direct and proximate result of the actions of Defendants herein, Plaintiff has and continues to sustain damages according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff S.G. requests that the Court grant the following relief:

1. For an order declaring that the Defendants have been deliberately indifferent to known acts of disability and gender-based discrimination and peer-to-peer harassment of S.G, and that this discrimination and harassment was so severe, pervasive, and objectively offensive that it effectively barred Plaintiff access to an educational opportunity or benefit in violation of the federal and state statutes listed herein.

2. A declaration that Defendants' conduct, as alleged herein, has violated and continues to violate Title II of the ADA; Section 504 of the Rehabilitation Act; Title IX of the Education Amendments Act of 1972; Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; California Government Code § 11135; California Education Code §§ 200, 201, 220, and 230; California Government Code § 835; and California Government Code § 815.6, and state common law torts.

3. That this Court enjoin Defendants their successors in office, agents, employees and assigns, and all persons acting in concert with them, to at minimum: stop engaging in the unlawful acts described herein, and to develop policies and procedures for ending any such unlawful acts, including but not limited to the following:

    a. Require the District to implement mandatory and effective training programs for District faculty, staff, and students on issues relating to disability and gender-based discrimination and methods to intervene to stop students from harassing other students based on their disabilities and/or gender;

//

      b.  Require the District to adopt policies with specific guidelines for instructing teachers, security guards, bus drivers, yard aides, school nurses, administrators, and/or other school staff about how to address complaints by students who have been taunted, harassed, or discriminated against because of their disabilities and/or gender; and

      c.  Require the District to maintain statistical data concerning each complaint of harassment based on a student's disability and/or gender made by a student or staff member, as well as the specific action District principals, assistant principals, teachers, school nurses, administrators, and other staff took to resolve each complaint.

4.     That this Court retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and until there are reasonable assurances that Defendants will continue to comply in the future, absent continuing jurisdiction.

5.     That this Court award S.G. nominal, general, compensatory, punitive, statutory, special and consequential damages in an amount according to proof as permitted by statute and at law.

6.     That this Court award S.G. medical expenses.

7.     That this Court award to S.G. any other damages as may be allowable under federal and state laws set forth above.

8.     That this Court award Plaintiff all litigation expenses and costs of this proceeding, and all reasonable attorneys' fees as provided by law.

//

//

//

//

1    9.    Such other and further relief as the Court may find just and proper.

2

3   Dated: February 21, 2025                BARAJAS & RIVERA

4

5

6                                    By:_____

7                                         Maronel Barajas

8                                         Attorneys for Plaintiff

9

10

11                      **DEMAND FOR JURY TRIAL**

12      S.G. hereby demands a jury trial.

13

14

15   Dated: February 21, 2025                BARAJAS & RIVERA

16

17

18                                    By:_____

19                                         Maronel Barajas

20                                         Attorneys for Plaintiff

21

22

23

24

25

26

27

28